## BILL v. NEW YORK EXPANDING METAL CO.

(Supreme Court, Appellate Division, Second Department. April 19, 1901.)

1. NEGLIGENCE—INDEPENDENT CONTRACTOR—LIABILITY—CONTRACTUAL RELATION.

Where plaintiff, who was an employé of a contractor for the brickwork of a building, was injured by falling through a floor which had been laid by defendant, the fact that no contractual relation existed between plaintiff and defendant did not prevent a recovery, since it was defendant's duty to do his work so as not to be a source of danger to others lawfully engaged in working on the building.

2. SAME—FLOOR SUPPORT—PREMATURE REMOVAL—LIABILITY—EVIDENCE—QUESTION FOR JURY.

Plaintiff, an employé of a contractor for the brickwork of a building, was injured by falling through a floor laid by defendant, an independent contractor. The floor was made by building a temporary support, over which was stretched a wire netting of expanding metal on which a layer of cement was placed, and the set of the concrete and the expanding of the metal formed a solid floor, after which the temporary support could be removed. The temporary support was partly removed before the concrete had set. There were three sets of men working on the building,— the employés of the owner, the bricklayers, and defendant's employés. The general foreman for the owner testified that a part of the floor support was removed the day after the concrete was laid, and that defendant's foreman came with a wagon for that purpose. No workmen other than defendant's had any concern with the flooring, and it was customary for the support to be removed by the contractor who made the floor. Defendant's foreman testified that he did not remove the support, or order it removed, but that he was absent from the building five or six days before the accident. Held, that the evidence was sufficient to justify submitting the question whether the support was removed by defendant to the jury.

3. SAME—NEGLIGENCE—ORDINARY CARE.

Defendant made a floor by building a temporary support, over which was stretched a wire netting of expanding metal, on which was laid a layer of cement, and from the setting of the concrete and the expanding of the metal a solid floor was formed. Before the concrete had set, defendant removed a part of the temporary support. The floor looked solid, and the testimony as to whether the door was barricaded so as to warn any one not to go on the floor was conflicting. Six days after the concrete was laid, plaintiff, an employé of another contractor, was injured by falling through the floor. On the day the concrete was laid, plaintiff obtained permission to go on the floor to build a scaffold, and there was no evidence that he had any knowledge of any change in the support. Held, that the question of defendant's negligence was for the jury.

4. SAME—CONTRIBUTORY NEGLIGENCE.

Plaintiff was not guilty of contributory negligence, as a matter of law, in going on the floor.

Appeal from trial term, Kings county.

Action by Frederick Bill against the New York Expanding Metal Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-BERG, JENKS, and SEWELL, JJ.

Arthur C. Palmer (Francis C. Reed, on the brief), for appellant. Isaac N. Kapper, for respondent.

JENKS, J. The plaintiff, who was the servant of a contractor for the brickwork of a building, went into a room thereof where the defendant, an independent contractor, was laying a floor, fell through the floor, and suffered an injury. The fact that there was no contract relation between plaintiff and defendant did not deprive the former of a cause of action, for there was an obligation upon the defendant to exercise due care while doing its work if it might otherwise be a source of danger to the plaintiff while lawfully engaged in his own work upon the building. Wittenberg v. Seitz, 8 App. Div. 439, 40 N. Y. Supp. 899; Reilly v. Construction Co., 83 Hun, 196, 31 N. Y. Supp. 618; Id., 3 App. Div. 363, 38 N. Y. Supp. 485. The defendant's method was to lay down a false floor of wooden beams or supports, then over this a net wiring of expanding metal, and then a layer of concrete or cement. After a few days, the cement hardens, and then the strength developed by the combination of the "set" concrete and the steel of the expanding metal makes the floor fit for use. The defendant began to lay this floor about a week before the accident, but had laid the finish coat of cement such a short time before that the cement had not become hardened or "set" at the time the accident happened. The false flooring is a temporary support, which is taken away when the cement becomes hardened. Before the accident (according to one witness, the day before) a part of this false floor had been removed. On the day of the accident there was presented, then, to the eye of the plaintiff, the floor of the room, apparently finished. That a part of this temporary support had been taken away was not apparent to him, inasmuch as the false floor was entirely beneath the surface of the floor, and the removal had been made from the room or cellar below. It is conceded that the accident was due to the fact that the part of the false floor had been improperly and prematurely taken away, so as to weaken the floor before it had hardened, and had thereby become usable. The learned counsel for the defendant contends that there was not evidence sufficient to submit the question to the jury whether this had been removed by the defendant. The witness Neild, an employé of the owner of the building, testified that he saw "one of the men of the defendant taking out the centers" (i. e. a part of the false floor), but on cross-examination showed he did not speak from positive knowledge, but upon the inference that none other would do this thing. Hart, the general foreman of the laborers employed by the owner of the building, testifies that one-half of the centers or supports were taken out the morning after the ce-

ment was put in, and that "the foreman" came there with a man
and a wagon for that purpose. It appears that there were three
sets of men at work about the building, namely, the laborers for
the owner of the building, the bricklayers employed by the plain-
tiff's master, and the employés of the defendant. Hart further
testifies that the centers, or a part thereof, were taken out the day
after the floor was laid; that "they" came there with a wagon; that
he had to get the key; that the gate was locked; and that none
could come in except the people that had authority from the Man-
hattan Company to do it, as there were strict orders for none to
interfere with any work there. Further, it appears that two of
these three gangs of men had no concern with the false flooring,
while the removal was not like unto the shifting of some detached
object from one place to another, but, as one witness testified, re-
quired the taking out, from wall to wall, of one section of a false
floor, which consisted of four joists, and which had been set in by
carpentry. It also appears that after a time the defendant always
removed the false floor as a detail of its work, and no reason is
given or explanation offered why any other person should gain
access to this locked-up room in order to cut away certain beams
in the ceiling thereof. To meet this, the defendant called Shaw,
foreman of the Manhattan Concrete Company, associated with the
defendant in the doing of the work, who testified that he had never
ordered that the false flooring should be taken out, and had never
taken it out himself, or allowed it to be taken out with his knowl-
edge. But it appeared that he had not been present during the
time intervening five or six days before the accident and the day
after it. Simpson, who had put in the false flooring, testified that
he had been working for Shaw elsewhere, and had been sent to
one Aschbinder,—Aschbinder & Shaw,—and that he had been sent
over to one Bell, who was there at the time the floor had been
put in. Neither Aschbinder nor Bell appeared as witnesses in the
case. The testimony of this interested witness did not change the
situation. There was a fair question for the jury, and the finding
by it that the removal of the false flooring, a temporary part of
the work of construction, was done by the defendant, was an in-
ference justified by the facts presented. It does not appear that
any motion was made at any time to dismiss the case upon the
failure of proof in this respect. Among the cases that present
somewhat similar questions are Guldseth v. Carlin, 19 App. Div.
588, 46 N. Y. Supp. 357; Dohn v. Dawson, 90 Hun, 271, 35 N. Y.
Supp. 984; Fisher v. Rankin, 78 Hun, 407, 29 N. Y. Supp. 143,
affirmed in 149 N. Y. 579, 43 N. E. 987. If this part of the false
flooring was prematurely removed by the defendant, did the de-
fendant, by omitting any precaution, fail, under the circumstances,
in its obligation to exercise due care? The manager of the defend-
ant testified that they never permitted traffic over the floor when
the false floor was under it, and that as quick as it was done—in
large jobs—it was the universal rule to put up danger signs, or in
some way to barricade it. Shaw, the foreman, said that it was
proper to keep the floor barricaded until the room was finally done.

There was the positive testimony by the plaintiff and his witnesses that there were neither barricades nor danger signals, but, on the contrary, that there was an open door of invitation from the hallway into the room, which thus presented its final surface. There was testimony by defendant's witness Shaw that when he left the work—which was, however, six days before the accident—there was a crossfoot in front of the open doorway; and there was testimony of Berquist, the superintendent, that this barrier remained until after the accident. But this merely presented a question for the jury. The plaintiff testified that he had to go into the room in order to build up a window from which bricks had been taken in order to let out machinery; that he had to finish some work therein,—joining the old and the new,—and there was no other place for doing the work. It could not be said as matter of law that the plaintiff was chargeable with want of ordinary care in entering through this open door upon this apparently completed floor, which, according to some of the witnesses, afforded the only access to his work. There is also evidence which warranted the jury to find that the plaintiff, on the day when the concrete was first laid, had asked and had obtained leave of Shaw, the foreman of the defendant, to go on the floor to put a scaffold there, and that with such permission he and his fellow workmen then went in there, and put up the scaffolding. No evidence is offered that the plaintiff knew, and none to make him chargeable with knowledge, that after this time a part of the support of the floor had been removed, so as to make it a pitfall or a trap. I find no merit in the exceptions taken.

The judgment and order must be affirmed, with costs. All concur.