FREDERICK BILL, Respondent, *v.* NEW YORK EXPANDED METAL COMPANY, Appellant.

*Negligence — injury from falling through a floor made of cement which had not yet set — duty of one independent contractor to the employees of another independent contractor working on the same building.*

Where several independent contractors are working on a building, each of them owes to the employees of the other contractors a duty to exercise due care in performing his work if it might otherwise be a source of danger to such employees while lawfully engaged in their own work on the building.

In an action to recover damages for personal injuries sustained by the plaintiff, while in the employ of a person who had contracted to erect the brick work

upon a building, it appeared that the defendant corporation was a contractor engaged in laying a floor in the building, and that its method of operation was to lay down a false wooden floor, then a metal netting and then a layer of concrete or cement; that after a few days the cement would harden and the floor would become fit for use, and that the false floor could then be removed.

The evidence tended to show that on the day of the accident the plaintiff found it necessary to go into the room in which the defendant was laying the floor in order to finish some work therein; that the door of the room was open; that there were no barricades nor danger signals present; that the floor was apparently finished, and that the plaintiff entered the room and fell through the floor. The accident was due to the fact that a portion of the false floor had been prematurely removed before the cement floor had hardened and become ready for use.

It was not affirmatively shown that the defendant's employees removed the false floor, but it did appear that the defendant always removed the false floor as a detail of its work, and that in order to remove the false floor it was necessary to go into the room under that in which the permanent floor was being laid, and that the lower room was kept locked.

*Held,* that a judgment entered upon a verdict in favor of the plaintiff should be sustained;

That the jury might properly find that the defendant had removed the false floor;

That as it did not appear that the plaintiff knew, or should have known, that a part of the false floor had been removed, it could not be said, as matter of law, that he was guilty of contributory negligence in attempting to cross the apparently completed permanent floor.

APPEAL by the defendant, the New York Expanded Metal Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 4th day of October, 1900, upon the verdict of a jury for $2,000, and also from an order entered in said clerk's office on the 22d day of October, 1900, denying the defendant's motion for a new trial made upon the minutes.

*Arthur C. Palmer* [*Francis C. Reed* with him on the brief], for the appellant.

*Isaac M. Kapper,* for the respondent.

JENKS, J.:

The plaintiff, who was the servant of a contractor for the brick work of a building, went into a room thereof where the defendant, an independent contractor, was laying a floor, fell through the floor and suffered an injury. The fact that there was no contract relation between plaintiff and defendant did not deprive the former of a cause of action. For there was an obligation upon the defendant to

exercise due care while doing its work if it might otherwise be a source of danger to the plaintiff while lawfully engaged in his own work upon the building. (*Wittenberg* v. *Seitz*, 8 App. Div. 439; *Reilly* v. *Atlas Iron Construction Co.*, 83 Hun, 196; S. C., 3 App. Div. 363.)

The defendant's method was to lay down a false floor of wooden beams or supports, then over this a net wiring of expanding metal, and then a layer of concrete or cement. After a few days the cement hardens, and then the strength developed by the combination of the "set" concrete and the steel of the expanding metal makes the floor fit for use. The defendant began to lay this floor about a week before the accident, but had laid the finish coat of cement such a short time before it that the cement had not become hardened or "set" at the time of the accident. The false flooring is a temporary support which is taken away when the cement becomes hardened. Before the accident (according to one witness the day before) a part of this false floor had been removed. On the day of the accident there was presented, then, to the eye of the plaintiff the floor of the room, apparently finished. That a part of this temporary support had been taken away was not apparent to him, inasmuch as the false floor was entirely beneath the surface of the floor, and the removal had been made from the room or cellar below. It is conceded that the accident was due to the fact that the part of the false floor had been improperly and prematurely taken away so as to weaken the floor before it had hardened and had, thereby, become usable. The learned counsel for the defendant contends that there was not evidence sufficient to submit the question to the jury whether this had been removed by the defendant. The witness Neild, an employee of the owner of the building, testified that he saw one of the men of the defendant taking out the centers (*i. e.*, a part of the false floor), but on cross-examination showed he did not speak from positive knowledge but upon the inference that none other would do this thing. Hart, the general foreman of the laborers employed by the owner of the building testifies that one-half of the centers or supports were taken out the morning after the cement was put in, and that "the foreman" came there with a man and a wagon for that purpose. It appears that there were three sets of men at work about the building, namely,

the laborers for the owner of the building, the bricklayers employed by the plaintiff's master and the employees of the defendant. Hart further testifies that the centers, or a part thereof, were taken out the day after the floor was laid; that "they" came there with a wagon; that he had to get the key; that the gate was locked, and that none could come in except the people who had authority from the Manhattan Company, as there were strict orders for none to interfere with any work there. Further, it appears that two of these three gangs of men had no concern with the false flooring, while the removal was not like unto the shifting of some detached object from one place to another, but, as one witness testified, required the taking out, from wall to wall, of one section of a false floor, which consisted of four joists, and which had been set in by carpentry. It also appears that after a time the defendant always removed the false floor as a detail of its work, and no reason is given or explanation offered why any other person should gain access to this locked-up room in order to cut away certain beams in the ceiling thereof. The defendant called Shaw, foreman of the Manhattan Concrete Company, associated with the defendant in the doing of the work, who testified that he had never ordered that the false flooring should be taken out, and had never taken it out himself or allowed it to be taken out with his knowledge. But it appeared that he had not been present during the time intervening five or six days before the accident and the day after it. Simpson, who had put in the false flooring, testified that he had been working for Shaw elsewhere, and had been sent to one Aschbinder — " Aschbinder & Shaw " — and that he had been sent over to one Bell, who was there at the time the floor had been put in. Neither Aschbinder nor Bell appeared as witnesses in the case. The testimony of this interested witness did not change the situation. There was a fair question for the jury, and the finding by it that the removal of the false flooring, a temporary part of the work of construction, was done by the defendant, was an inference justified by the facts presented. It does not appear that any motion was made at any time to dismiss the case upon the failure of proof in this respect. Among the cases that present somewhat similar questions are *Guldseth v. Carlin* (19 App. Div. 588); *Dohn v. Dawson* (90 Hun, 271); *Fisher v. Rankin* (78 id. 407; affd., 149 N. Y. 579.)

If this part of the false flooring was prematurely removed by the defendant, did the defendant, by omitting any precaution, fail, under the circumstances, in its obligation to exercise due care? The manager of the defendant testified that they never permitted traffic over the floor when the false floor was under it, and that as quick as it was done — in large jobs — it was the universal rule to put up danger signs or in some way to barricade it. Shaw, the foreman, said that it was proper to keep the floor barricaded until the room was finally finished. There was the positive testimony by the plaintiff and his witnesses that there were neither barricades nor danger signals, but, on the contrary, that there was an open door of invitation from the hallway into the room, which presented its final surface. There was testimony by defendant's witness Shaw that when he left the work, which was, however, six days before the accident, there was a cross-foot in front of the open doorway, and there was testimony of Berquist, the superintendent, that this barrier remained until after the accident. But this merely presented a question for the jury.

The plaintiff testified that he had to go into the room in order to build up a window from which bricks had been taken in order to let out machinery; that he had to finish some work therein, joining the old and the new, and there was no other place for doing the work. It could not be said as matter of law that the plaintiff was chargeable with want of ordinary care in entering through this open door upon this apparently completed floor, which, according to some of the witnesses, afforded the only access to his work. There is also evidence which warranted the jury to find that the plaintiff, on the day when the concrete was first laid, had asked and had obtained leave of Shaw, the foreman of the defendant, to go on the floor to put a scaffold there, and that, with such permission, he and his fellow-workmen then went in there, and put up the scaffolding. No evidence is offered that the plaintiff knew and none appears to make him chargeable with knowledge that after this time a part of the support of the floor had been removed so as to make it a pitfall or a trap.

I find no merit in the exceptions taken.

The judgment and order must be affirmed, with costs.

Judgment and order unanimously affirmed, with costs.