George **LEBRECHT**, Plaintiff-Appellee,

v.

**BETHLEHEM STEEL CORPORATION**, Defendant-Appellant.

No. 35, Docket 32098.

United States Court of Appeals Second Circuit.

Argued Sept. 30, 1968.

Decided Oct. 29, 1968.

Benjamin Heller, New York City (Reid, Devlin, Grubbs & Jackness, New York City, on the brief), for defendant-appellant.

Benjamin H. Siff, New York City (Howard Wachtel, Hicksville, N. Y., on the brief), for plaintiff-appellee.

Before SMITH, KAUFMAN and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is a diversity action for personal injuries suffered as a result of a construction accident at the 1964–65 World's Fair at Flushing Meadows, New York. The plaintiff, George Lebrecht, was installing Otis elevators in the unfinished observation tower of the New York State Pavilion when he stepped on an unsecured piece of corrugated steel decking called "slabform" and fell twenty feet to the level below. As a result of the accident, Lebrecht sustained severe spinal injuries, including multiple fractures of the spinal column and injury to the spinal cord, which will leave him partially paralyzed and probably unemployable for the rest of his life.

On trial to the jury in the United States District Court for the Eastern District of New York, Jacob Mishler, Judge, the jury found that the accident resulted from the negligence of the Bethlehem Steel Corporation, the steel subcontractor for the job, and returned a verdict in the amount of $590,000. Judgment was entered in that amount, and the defendant appeals. Specifically, Bethlehem urges (1) that the plaintiff was guilty of contributory negligence as a matter of law, (2) that there is insufficient evidence to support the verdict, (3) that the verdict is excessive, (4) that there were errors in the charge to the jury, and (5) that certain evidence was erroneously admitted. We find no error and affirm the judgment.

At the time of the accident, Lebrecht and his helper, Murray, were installing elevator guide rails at the fourth level of the unfinished observation tower. Construction was still going on at that level, and Bethlehem steel workers were putting down slabforms over the steel beam supports for the floor.

Slabforms are heavy-duty corrugated steel sections, and they are used as permanent forms for pouring concrete floors. According to the procedure described at trial, slabforms are installed by placing them end to end so that the ribs of the edge of one section overlap the corresponding ribs of those sections

already secured. After the slabforms are set down, they are fastened into the supporting steel beams below by small self-tapping screws. When this is completed, the whole surface is covered with wire mesh and the concrete floor is poured.

Except for the immediate area where Lebrecht and his helper were working, practically all of the slabform work for the fourth level had been completed at the time of the accident. The Bethlehem workers could not install slabform sections in the unfinished area near Murray, however, because Murray was in the way. He was seated on a steel beam near the elevator shaft and was aligning guide rails. He was about 12 or 13 feet away, across the shaft from the plaintiff, who was also aligning guide rails on the opposite face of the elevator hatchway. While waiting for Murray to move out of the way, Bethlehem workers left an unsecured section of slabform in the area near him, placing it in such a manner that part of it overlapped a section which had already been installed and the remainder extended over open space without support.

Thirty to forty-five minutes after the slabform had been left this way, the plaintiff got up and started walking toward Murray. When he stepped on the loose section of slabform, he fell through the unfinished floor to the level below. The plaintiff testified at trial that he did not see the Bethlehem workers put down the unsecured piece of slabform, that he looked where he was going, and

that the slabform appeared to be a "solid walking surface."

The main thrust of the defendant's argument is that the plaintiff was contributorily negligent as a matter of New York law.[1] The contributory negligence argument can be divided into two parts. First, Bethlehem says that the plaintiff was an experienced construction worker, that he was familiar with the process of installing slabforms, and therefore that he should have known "he was inviting inevitable danger as he approached the open space without making certain that the slabform which jutted out, with two of its sides exposed, was secured." If the plaintiff was aware of the existence at this place of an unsupported section of slabform and the danger of walking on it, or if he should have been aware of the existence of an unsupported section here and of the danger, then he would be contributorily negligent as a matter of law. See Whalen v. Citizens' Gas Light Co., 151 N.Y. 70, 45 N.E. 363 (1896); Storr v. New York Central Railroad Co., 261 N.Y. 348, 185 N.E. 407 (1933). Given the conflicting testimony as to the obviousness of the lack of support and hence the danger, however, the question of contributory negligence was properly submitted to the jury. Cf. Harner v. John McShain, Inc. of Maryland, 394 F.2d 480 (4th Cir. 1968).

In addition, Bethlehem insists that the unsupported slabform was dangerous only because it was put to an unanticipated use by someone "who had no business [walking] on the slabforms."[2]

1. Under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (1938), the applicable law is unquestionably that of New York.

2. In support of this argument Bethlehem relies on those New York cases which hold that there is no negligence if the plaintiff is injured while working on a part of the structure where he ought not to have been, or where he injures himself by using a part of a structure for an unintended purpose. See, for example, Masciarelli v. Powell, 30 A.D.2d 342, 291 N.Y.S.2d 967 (1st Dept.

1968) (complaint dismissed where it appeared that construction worker was using auto guard rail for support purposes for which it was not intended); Gasper v. Ford Motor Co., 13 N.Y.2d 104, 242 N.Y.S.2d 205, 192 N.E.2d 163 (1963) (worker using plank as window washing platform held to be contributorily negligent as a matter of law for "putting a common structural device to an unintended purpose"): Italiano v. Jeffrey Garden Apartments, Section II, Inc., 3 A.D.2d 677, 159 N.Y.S.2d 338 (2d Dept. 1957), aff'd 3 N.Y.2d 977, 169 N.Y.S.2d 737, 147 N.E.2d 245 (1957) (contributory

Since Bethlehem advertised that its slabforms provide "a solid, safe working platform for all trades" [Plaintiff's Exhibit # 1], we cannot say that the plaintiff was injured while using the slabform for an unintended purpose. Nor can we say that he was walking on a part of the structure where he did not belong. Under the circumstances, then, the question of contributory negligence was for the jury. Cf. Bill v. New York Expanding Metal Co., 60 App.Div. 470, 69 N.Y.S. 989 (2d Dept.1901); Rashkoff v. Erie Railroad Co., 141 App.Div. 624, 126 N.Y.S. 489 (1st Dept.1911), aff'd 206 N.Y. 744, 100 N.E. 1133 (1912).

■ Equally unconvincing is Bethlehem's claim that there was insufficient evidence to support a jury verdict in favor of the plaintiff. Only when there is no "evidence of substance" upon which reasonable men could reach the result represented by the verdict is the trial judge empowered to set aside the verdict and enter judgment n. o. v. for the moving party. Binder v. Commercial Travelers Mutual Accident Association, 165 F.2d 896 (2d Cir. 1947). It is hornbook law that when a motion is made to set aside the verdict, the trial court, as well as the appellate courts, must view the evidence in the light most favorable to the nonmoving party, and must give that party "the benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn." Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8 L. Ed.2d 777 (1962).

We do not know whether the unsupported piece of slabform looked like a "solid walking surface," as the plaintiff contends, or whether it was an "obvious danger" to anyone who took the trouble to look, as the defendant argues. Nor do we know for certain how far the unsupported slabform extended into space. These would seem to be precisely the kinds of factual questions to be decided by a jury, and it would be a bit unreal for us to say that reasonable minds could not reach the verdict arrived at in this case.

Bethlehem does not dispute that its workers left the unsupported slabform in an area where other construction people were working, and that there were no signs, barriers, or anything else which might be taken as a warning that the slabform was not secured to the beams below. Nor does Bethlehem dispute the fact that there was nothing to distinguish this piece of unattached slabform from the other sections of decking already installed on the fourth level. In addition, the Behlehem foreman, Frank Pistillo, testified that it was customary for carpenters, electricians, elevator men, and other non-steel construction workers to use the slabform decking as a walking and working surface.

■ Looking at the evidence most favorable to the plaintiff, there was more than enough evidence to support the jury verdict in this case. The basic function of the jury "is to select from among conflicting inferences and conclusions that which it considers most reasonable." Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944). See also Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946). Given the conflicting evidence as to whether the plaintiff should have seen the lack of beam support, we cannot say that the jury has made unreasonable findings of fact. Cf. O'Connor v. Pennsylvania Railroad Co., 308 F.2d 911 (2d Cir. 1962).

■ Bethlehem also argues that if it is not entitled to judgment, then it is at least entitled to a new trial on the theory that the jury was not properly instructed on the question of contributory negligence. Judge Mishler instructed the jury that under New York law a contractor working on a construction job

negligence not a jury question in case where bricklayer's helper fell because of

the collapse of a fence pole he was using as a work platform).

was obligated to use reasonable care so as to avoid creating conditions unnecessarily dangerous to other workers. This is unquestionably an accurate statement of New York law. See Harriman v. New York Central & St. Louis Railway Co., 253 N.Y. 398, 171 N.E. 686, 687 (1930), where the New York Court of Appeals said:

> An independent contractor owes to the employees of other contractors working on the same structure the duty of exercising due care in performing his work if it is of such a nature that it probably will be a source of danger to other employees while lawfully engaged in work on the structure.

■ Nonetheless, Bethlehem says that the charge was too abstract in that it omitted to tell the jury that the plaintiff was someone "who had been working on the construction project for some time and who had seen how the slabforms were installed." In his instructions, Judge Mishler told the jury that they should find for the defendant if the plaintiff knew or should have known that the slabform was unsupported, because "as an experienced workman the plaintiff should have seen it and they [Bethlehem] owed no duty to warn him of the obvious." Plainly the instructions were specific enough to avoid any confusion on the question of contributory negligence.

■ Next, Bethlehem argues that the jury should have been told to find for the defendant if there was "a safe alternative passage" which the plaintiff failed to take. The only alternative way of reaching Murray was for the plaintiff to walk along the open steel beams, and since the plaintiff was not a steel worker by trade, it is preposterous to say that these narrow beams provided a "safe" way for traversing the work area. Moreover, the requested charge is misleading. If the plaintiff had no reason to suspect that the slabform was unsupported, then it is difficult to understand why the availability of a safe alternative route should absolve the defendant of negligence.

■ The defendant also argues that damages in the amount of $590,000 are excessive. While we have held that we have the power to set aside jury verdicts for excessiveness, Dagnello v. Long Island Railroad Co., 289 F.2d 797 (2d Cir. 1961),[3] we do not think that the verdict is so high that it would be a denial of justice to permit it to stand.[4]

■ The instructions to the jury properly allowed a recovery for the loss of past earnings, the loss of future earnings, and pain and suffering and the effect of plaintiff's injuries "on what might have been expected to be a normal life." At the time of the accident the plaintiff was earning approximately $14,000 a year, and the prospects seemed good for salary increases as well as job promotion. Since he was only 28 years old, he could reasonably be expected to work for another 35 years. As-

---

3. In addition to holding that we have the power to set aside verdicts for excessiveness, we have also held that we have the power to order remittitur in proper cases. Dagnello v. Long Island Railroad Co., supra, at 804. Thus, where the verdict was grossly excessive, we have given the plaintiff the option of remitting the excessive portion or submitting to a new trial. The Second Circuit remittitur cases are collected in Lanfranconi v. Tidewater Oil Co., 376 F.2d 91, 97 (2d Cir. 1967), cert. denied 389 U.S. 951, 88 S. Ct. 334, 19 L.Ed.2d 361 (1967). For remittitur cases decided since *Lanfranconi*, see Wicks v. Henken, 378 F.2d 395 (2d Cir. 1967), and Grunenthal v. Long Is-

land Railroad Co., 388 F.2d 480 (2d Cir. 1968), cert. granted 391 U.S. 902, 88 S. Ct. 1651, 20 L.Ed.2d 416 (1968). Although remittitur practice has been criticized for being inconsistent with the Seventh Amendment guarantee of a jury trial in civil cases, we specifically rejected that argument in *Dagnello*.

4. Cf. Wooley v. Great Atlantic & Pacific Tea Co., 281 F.2d 78 (3d Cir. 1960), where the Third Circuit said that a jury verdict should not be disturbed unless "so grossly excessive as to shock the judicial conscience" so that it would be a "manifest abuse of discretion" not to order a new trial.

suming that the plaintiff would never have been promoted, and assuming also that there would be no salary increases for the next 35 years, it would seem that at the very least the plaintiff would have earned almost $500,000 in his lifetime, which converts actuarially to a present value of approximately $250,000. While this amount does not take into account any taxes which the plaintiff would have had to pay on his earnings, the figure is not inflated excessively, since it does not reflect any promotions or pay raises that the plaintiff might reasonably have been expected to get. His lost earnings for the 1964–67 period, including contributions which Otis Elevator would have made to a pension fund, came to almost $65,000, and his medical expenses totalled approximately $8,900 at the time of trial. Without counting money damages for pain and suffering, it would seem that plaintiff's economic loss alone amounted to well over $300,-000.

When the plaintiff was taken to Flushing Hospital following his fall, he was unconscious, his legs were paralyzed, and his spinal column was fractured in at least three places. He was transferred the same day to Lenox Hill Hospital, where an emergency operation was performed three days later to relieve pressure on the spinal cord. He remained in the hospital for almost two months, during which time some motor power returned to his legs. Seven months later, the plaintiff was re-admitted to Lenox Hill Hospital, and two emergency operations were subsequently performed. These showed that scar tissue was pressing on the sensory nerves of the spinal cord, and that the plaintiff was suffering from permanent spinal malalignment which resulted in paralysis of the lower legs. While the plaintiff has progressed to the point where he is now able to walk and do light work around the house, he complains of frontal headaches, dizziness, blurred vision, bladder malfunctioning, and difficulty in breathing. He is unable to have sexual relations with his wife. After the first operation, the plaintiff was put in a leather-covered steel brace which covered practically all of his upper body. Following his second operation, he was put in a concrete body cast which he wore until February 1965, when he was given a steel brace which he still wears.

At the trial a leading orthopedic surgeon testified that plaintiff's condition is permanent, that it is becoming progressively worse, and the plaintiff is unemployable. Given the severity of plaintiff's injuries, the likelihood that he will be partially paralyzed for life, and the spinal operations he has already undergone and the concomitant discomfort, we conclude that the verdict is not excessive.

■ At the time of the accident the plaintiff was married and has two small children. At the trial he testified that he is now unable to play ball with his son, and can no longer participate in normal recreational activities with his children. The defendant argues that these references to plaintiff's children were intended to induce sympathy on the part of the jury, and that it was error to admit them. References to dependent children are inadmissible, of course, where they are wholly irrelevant to any issue being litigated. Pennsylvania Co. v. Roy, 102 U.S. 451, 26 L.Ed. 141 (1881). Where the references serve a legitimate purpose, however, they are plainly admissible. Tropea v. Shell Oil Co., 307 F.2d 757 (2d Cir. 1962).

■ We recognize that it is not always easy to determine the effect of such evidence on a jury verdict. Where reference to dependent children "can serve both legitimate and illegitimate purposes, the trial judge must be given some latitude in setting the bounds of propriety." Tropea v. Shell Oil Co., supra, at 769. In permitting the plaintiff to testify that he was married and had two small children, Judge Mishler ruled that such evidence was admissible because it was relevant to the issue of damages. We do not think this was an abuse of discretion. Cf. Dagnello v. Long Island Railroad Co., supra, where

Judge Medina wrote that the plaintiff was "married and had one child, with another on the way," and seemed to think this was a relevant consideration in assessing damages.

Since the jury is entitled to consider the effect of plaintiff's injuries on the "normal pursuits and pleasures of life," Grunethal v. Long Island Railroad Co., 388 F.2d 480, 484 (2d Cir.), cert. granted 391 U.S. 902, 88 S.Ct. 1651, 20 L.Ed.2d 416 (1968), it would seem that plaintiff's inability to play with his children is not wholly unrelated to the question of damages. We cannot say that this was a change in plaintiff's circumstances which the jury ought not have considered. At the trial the plaintiff also complained that he had become irritable towards his children as a result of the accident. Under the logic of *Tropea*, evidence relevant to "the physic state of the plaintiff before and after the accident" is not inadmissible simply because it contains references to dependent children.

As an additional ground for reversal Bethlehem urges that Judge Mishler should not have admitted into evidence a photograph showing the area where the accident took place. It was taken the day after the accident occurred, and showed that some wood planking had been put down where there had been open space the day before. In admitting the post-accident photograph, Judge Mishler specifically instructed the jury to disregard the planking, and asked a witness to write the words "not there" across the disputed part of the photograph.

Bethlehem insists that this photograph was highly prejudicial because the jury may have thought that planking should have been put down before the accident. The difficulty with this argument is that it misconceives the basic questions submitted to the jury. The question for the jury was whether the defendant had created a hazardous condition by leaving a slabform resting over open space without any supports,

not whether it was obligated to cover the open space with planking, and it is perfectly plain that there were other unfinished sections of the fourth level which were not covered with planking. In his limiting instructions, Judge Mishler made it clear that he was allowing the photograph in evidence "so that the jury knows what the conditions were at or about the time of the accident and nothing else." Except for the planking, which the jury was specifically instructed to ignore, no one seriously disputes the accuracy of the photograph, and we cannot say that the trial judge abused his discretion in admitting the photograph with the limiting instructions. Cf. Manning v. New York Telephone Co., 388 F.2d 910 (2d Cir. 1968).

Judgment affirmed.