Roshan L. MEHRA, as Administrator of the Goods, Chattels and Credits which were of Rajinder K. Mehra, Deceased, Plaintiff,

v.

Roberta BENTZ and Rudolph J. Bentz, Jr., Defendants.

No. 72 C 787.

United States District Court, E. D. New York.

April 3, 1975.

Feder & Kaszovitz, New York City, for plaintiff.

Bower & Gardner, New York City, for defendant.

## OPINION

PLATT, District Judge.

Defendants move pursuant to Rule 50 (b) and (c) of the Federal Rules of Civil Procedure for a judgment notwithstanding a jury verdict in favor of the plaintiff in the amount of $10,000 on plaintiff's first claim and $69,500 on

plaintiff's second claim on the grounds that: (i) there was no evidence of negligence on the part of the defendants, and (ii) plaintiff's intestate was guilty of contributory negligence as a matter of law.

At the close of the evidence offered by the plaintiff and at the close of all of the evidence defendants moved to dismiss on the foregoing grounds and the Court in each case reserved decision.

In the alternative, defendants move pursuant to Rule 59 of Federal Rules of Civil Procedure for a new trial on the following grounds:

   (i) The verdict was contrary to the weight of the credible evidence.

   (ii) The charge of the Court with respect to a reduced burden of proof on behalf of the plaintiff was erroneous under applicable Pennsylvania Law.

   (iii) The charge of the Court with respect to the burden of proof necessary on behalf of the defendant on the issue of contributory negligence was in variance with Pennsylvania Law.

   (iv) The verdict as rendered was so grossly excessive as to indicate a lack of proper deliberation on behalf of the jury and as such mandates the granting of a new trial.

   (v) The weight of the evidence in the findings of the jury are so incompatible as to mandate a new trial.

Plaintiff's complaint was divided into two claims, the first for conscious pain and suffering (for which the jury awarded $10,000) and the second for support payments for his parents (for which the jury awarded $67,000) and funeral expenses (for which the jury awarded $2,500).

This is the second trial of this case; the first having occurred before U. S. District Judge Orrin G. Judd and a jury in November, 1973, at the conclusion of which the jury returned a verdict for the defendants.

During the course of the first trial, evidence was inadvertently admitted which indicated that plaintiff's intestate's life was insured under a life insurance policy for $100,000.; the beneficiaries of which were the plaintiff and his spouse (the deceased's parents). Even though Judge Judd instructed the jury during the course of trial and in his charge that they should disregard this evidence, he apparently felt that such admission was so prejudicial to the plaintiff as to require him to set aside the verdict for the defendants and order a new trial. Accordingly, the case came on for trial before this Court in February, 1975, and, as indicated, the second jury reached a diametrically opposed verdict.

On the instant motions the Court is required, of course, to view the evidence in the light most favorable to the plaintiff. Lebrecht v. Bethlehem Steel Corp., (2d Cir. 1968) 402 F.2d 585; Wenhold v. O'Dea, 338 Pa. 33, 35, 12 A.2d 115.

In this light, the facts are that Rajinder K. Mehra, age 32 years, was struck and fatally injured on April 5, 1972 at approximately 11:15 PM by an automobile driven by Rudolph J. Bentz, Jr. and owned by then Roberta Lintz (now Bentz) who was then the six year fiancee of (and is now the wife of) Rudolph J. Bentz, Jr.

The automobile, a small Volkswagen, was travelling north on Route 309, a four-lane, divided, limited access highway in Salisbury, Pennsylvania, and at a point approximately 500 feet north of an access known as Cedarcrest Boulevard the accident occurred. As indicated, Route 309 consists of two lanes north and two lanes south and is separated by a center divider. There were no other cars on any of the four lanes; there were no eye witnesses and there were no lights except for the headlights on defendants' Volkswagen which were lit.

The defendant Rudolph Bentz, Jr. testified (and his testimony was corroborated by his wife and in part by his former professor) that he and his fiancee had had dinner at the home of his former Professor Rabot; that he had had two cocktails during the hour or so before a 7 PM dinner, a glass of beer with dinner, and coffee after dinner; that his fiancee and he had started for their homes at approximately 10:45 PM in her Volkswagen which he was driving; that they had turned on to Route 309 and were proceeding northbound in the righthand lane at a speed of approximately 55 miles per hour; that the speed limit on such highway was 60 miles per hour; and that he was looking and observing the roadway in front of him as lit up by the VW's headlights. There was no other traffic either in front or behind them or coming in the opposite direction; the weather was dry and there was no illumination on the roadway except that which came from the VW's headlights.

Defendant Rudolph Bentz, Jr. testified further (and there was no evidence to contradict the same) that a split second prior to the impact he observed a glimpse or image of something to his left and in the next instance the impact occurred causing damage to the left side of his VW's left front fender and shattering the left side of the windshield in upon him. He said that he had no opportunity either to apply his brakes or slow his speed from the time that he first caught a glimpse of an image until the time of the impact. He testified further that he brought his car under control and brought it to a stop at a point which later proved to be approximately 400 feet from where the plaintiff's intestate was found. One of the pictures of the VW taken after the accident shows a shadow or mark which was variously described as a "dirt mark" or "smudge" on the left side of the front bumper but other pictures introduced into evidence do not reveal any such mark. When questioned, both defendants indicated that such mark might

have been made by one or the other of them shortly after the accident when they were sitting on the front of the Volkswagen discussing what possibly could have happened at a time before they were informed of the existence of plaintiff's intestate on the roadway. All of the pictures, however, definitely show (i) a dent on the left side of the Volkswagen's left front fender behind the headlight and (ii) a shattered left side of the windshield.

There was no evidence of any skid marks or of any attempt by the defendant Rudolph Bentz to bring his Volkswagen to an immediate stop. Indeed, the evidence quite clearly shows that neither of the defendants was aware of what happened until several minutes after the accident when the occupants of another car came up to them and advised them of the existence of plaintiff's intestate on the highway.

Within a half hour or so after the impact, the authorities had arrived and plaintiff's intestate was pronounced dead. His body was removed to the offices of the local coroner where a blood sample was taken which, when tested, revealed a gross weight of alcohol in his blood of thirty-nine one-hundredths (0.39) percent. The supervisor of the testing laboratory testified that .10% alcohol blood content was presumptive of intoxication and .40% was evidence of a comatose condition in the average person.

Plaintiff argues that there was sufficient evidence from which the jury could infer that the defendant Rudolph Bentz should have seen the plaintiff's intestate prior to the accident; that the Volkswagen was being operated at a speed in excess of the 60 mph speed limit; and/or that said defendant, having had some drinks and his fiancee in the car was driving at a speed or otherwise in a manner that his vehicle was not under control. There is nothing, however, in the record to support any such inference. The only testimony, (i. e., that of both of the defendants) is that the speed of the Volkswagen was 55 mph;

that the vehicle was fully under control and that the defendant Rudolph Bentz was maintaining a normal lookout ahead. There is no evidence that he was in any way affected by the two cocktails that he had consumed several hours before the accident. All the testimony is to the contrary.

In Martin v. Marateck, 345 Pa. 103, 27 A.2d 42 (1942), the Pennsylvania Supreme Court reviewed the authorities in that State and under similar circumstances held that a verdict for the plaintiff could not be sustained. In the *Martin* case the decedent was struck by an automobile driven by the defendant on a public highway known as Route 11 at about 9:30 in the evening of June 8, 1940 at a point immediately east of the Village of New Kingston, Cumberland County. Route 11 is a main highway running between Carlisle and Harrisburg in an East/West direction and at the time of the collision the defendant was driving in a westerly direction. The decedent was first seen passing between certain gasoline pumps and a filling station building by a motorist driving up to purchase gasoline. The witness next saw the decedent near the middle of the highway just as the defendant's car was then "just upon him" and "just ready to hit". An inspection of the motor vehicle after the accident revealed that "it was damaged on the right side; the right cowl light and the right front door window was cracked". In holding that there was no evidence of negligence on the part of the defendant the Pennsylvania Supreme Court made the following pertinent comments (345 Pa. at pp. 106–108, 27 A.2d at p. 44):

"Viewing this evidence in the light most favorable to appellant, as we are required to do in passing upon the propriety of the nonsuit (Wenhold v. O'Dea, 338 Pa. 33, 35, 12 A.2d 115), we are nevertheless bound to conclude, as did the court below, that it was clearly insufficient to take the case to the jury on the issue of appellee's negligence. The mere fact that the deceased was struck by the automobile of appellee on a public highway, which is all that is disclosed with any degree of certainty, affords no proof that the appellee was at fault. In addition to establishing the fact of accident, it was incumbent upon appellant so to describe, picture or visualize what actually happened at the time of the accident as to enable one fixed with the responsibility for ascertaining the facts to find that the appellee was negligent and that his negligence was the proximate cause of the accident. See Fisher v. Amsterdam, 290 Pa. 1, 3, 137 A. 797; Lithgow v. Lithgow, 334 Pa. 262, 264, 5 A.2d 573; Skrutski v. Cochran, 341 Pa. 289, 291, 19 A.2d 106. This appellant's evidence obviously fails to do. The record is devoid of any evidence showing how Martin came onto the highway or what length of time he was in the highway before he was struck, and his actions and movements from the time he left the gas pumps until the moment of impact are left wholly unexplained, so that it is impossible to infer from the evidence presented that appellee saw or should have seen him on the highway a sufficient time before the accident to bring the automobile to a stop, if under proper control. Under such circumstances, and in the absence of any evidence that appellee was driving in an improper manner or at an excessive rate of speed, that his attention was distracted, or that his car was mechanically defective, a verdict in favor of appellant would necessarily be based upon pure speculation and conjecture, rather than upon any proof of negligence, and could not be sustained; McAvoy v. Kromer, 277 Pa. 196, 120 A. 762; Hadhazi v. Zero Ice Corporation, 327 Pa. 558, 194 A. 908; Pfendler v. Speer, 323 Pa. 443, 185 A. 618; Brooks v. Morgan, 331 Pa. 235, 200 A. 81; Wenhold v. O'Dea, supra; Skrutski v. Cochran, supra.

"McAvoy v. Kromer, supra, is a case closely in point here. There a child, seven years of age, was struck by an automobile, between crossings, on a city street. He was seen just as

he left the curb to cross the street and was next seen either being struck or under the front part of the vehicle; no one saw him in the intervening space from the curb to the place of accident. On this state of the proofs, this Court held there could be no recovery for the injuries to the child, stating as follows (277 Pa. pp. 197–98, 120 A. 762): ' * * * to affirm appellee's case, we must hold that a mere collision between an automobile and a pedestrian or vehicle proves negligence; this it does not do. * * * Was he run down by the car, the driver of which could have seen him a sufficient length of time to have guarded against it? The accident occurring between crossings, did he suddenly run in front of the car; was he crossing the street heedlessly; was he crossing the street without regard to traffic * * *? Did he reach the south side of the street safely and suddenly dart back in front of the car? Or did the car suddenly swerve, striking him? All these circumstances are left to conjecture; defendants might have been responsible for one or more of the causes and not so as to others. In such cases, where it is equally probable the accident may have resulted from either cause, there can be no recovery: Alexander v. Pennsylvania Water Co., 201 Pa. 252, 50 A. 991.' Another case substantially identical to the one in hand is Hadhazi v. Zero Ice Corporation, also supra. In that case deceased was seen before he was struck, about the middle of a thirty-feet-wide street, not at an intersection, but the evidence did not disclose where he came from or what were his movements immediately before the automobile reached him. Witnesses testified they heard the brakes of the automobile screech and saw deceased in front of it, just how far away they could not say. As in the present case, no evidence was offered that the automobile was being driven in a careless manner, and no question of excessive speed or mechanical defect of the car was involved. In sus-

taining a compulsory nonsuit, this Court said (327 Pa. p. 559, 194 A. 908): 'We, therefore, have a situation where the only basis for the conclusion that the automobile was negligently operated must be the fact that deceased was in the street, and that the brakes screeched, indicating that the driver of the car was endeavoring to stop it. This was not sufficient. "The mere fact that a decedent, a pedestrian, was struck by a vehicle on a public highway was not sufficient to support a finding of negligence." Sajatovich v. Traction Bus Co., 314 Pa. 569, 572, 172 A. 148.' Applying these decisions to the present case, the conclusion is inescapable that under appellant's evidence there was no question of negligence on the part of appellee to be presented to the jury, and hence the motion to take off the compulsory nonsuit was properly refused."

Similarly, in the case at bar, since the record is devoid of any evidence showing how plaintiff's intestate came on to the highway or what length of time he was on the highway before he was struck and his movements on the highway until the moment of impact are left wholly unexplained, "it is impossible to infer from the evidence presented that [defendant] saw or should have seen him on the highway a sufficient time before the accident to bring the automobile to a stop * * *. Under such circumstances and in the absence of any evidence that [said defendant] was driving in an improper manner or at an excessive rate of speed, that his attention was distracted, or that his car was mechanically defective, a verdict in favor of (plaintiff) would necessarily be based upon pure speculation and conjecture, rather than upon any proof of negligence, and could not be sustained."

The plaintiff argues, nonetheless, that the jury could have and did disbelieve the defendant driver's claim that he was observing the roadway ahead.

However, even if the jury could have found "from the evidence that the defendant [driver] was at fault in fail-

ing to observe the plaintiff['s intestate,] the same evidence renders more manifest decedent's default in failing to see the defendants' approaching vehicle." Auel v. White, 389 Pa. 208, 132 A.2d 350 (1957).

In the *Auel* case, *supra*, the facts were strikingly similar to those in the case at bar. There at about 9 PM the plaintiff, about 60 years of age, was walking across a four lane 45 foot in width thoroughfare in Allegheny County. After the plaintiff traversed the roadway on the south side of the street and crossed the center line thereof he was struck by the defendant's car at a point between the left front bumper and fender and by reason of the injuries inflicted was rendered mentally incompetent. The defendant "stated that 'I didn't see that man until I hit him'."

Moreover, in that case since the plaintiff was incompetent the Court accorded him the same presumption as would have been accorded a decedent and nonetheless held that he was guilty of contributory negligence as a matter of law. If anything, the case at bar presents an *a fortiori* situation in that the plaintiff here was clearly shown to have been heavily intoxicated and to have been a pedestrian on a limited access highway in the middle of the night where he had no right to be.

In holding the plaintiff guilty of contributory negligence as a matter of law the Pennsylvania Supreme Court said in *Auel*, (389 Pa. at pp. 213–214, 132 A.2d at p. 353):

"However, even if the jury could find from the evidence that the defendant was at fault in failing to observe the plaintiff the same evidence renders more manifest plaintiff's default in failing to see the defendant's approaching vehicle. It is well established that where a pedestrian traverses a street at other than a regular crossing he is bound to exercise a higher degree of care for his own safety than would be the case were he crossing at an intersection. Harris v. DeFelice, 379 Pa. 469, 475, 109 A.2d 174; Rucheski v. Wisswesser [et al.], 355 Pa. 400, 50 A.2d 291. The reason for the rule is apparent for he is crossing at a place where vehicular traffic could not be expected to anticipate a pedestrian. Schweitzer [et al.] v. Scranton Bus Co., 344 Pa. 249, 25 A.2d 156. It is equally well settled that it is the duty of a pedestrian to look before he undertakes a street crossing and to continue to look as he proceeds and such duty is particularly incumbent upon one who traverses a street between intersections. Aaron v. Strausser, 360 Pa. 82, 59 A.2d 910. Since the plaintiff herein was unable, due to his failure of memory, to give his version of the accident, the same presumption of due care which arises upon the death of a party was applicable. Where a plaintiff's mind is a blank as to an accident and all its incidents, the presumption is that he did all that the law required him to do and was not guilty of contributory negligence. Heaps [et al.] v. Southern Pennsylvania Traction Co., 276 Pa. 551, 553, 120 A. 548; Grgona v. Rushton, 174 Pa.Super. 417, 101 A.2d 768. The presumption, however, is a rebuttable one and must give way when the facts as established by plaintiff's evidence show that he was guilty of contributory negligence. Hogg [Admr.] v. Bessemer & Lake Erie R. Co., 373 Pa. 632, 638, 96 A.2d 879; Rank v. Metropolitan Edison Co., 370 Pa. 107, 115, 87 A.2d 198. * * *

* * * * * *

" * * * There was nothing to show that plaintiff's view was in any way obscured, and, therefore, he was bound to see that which must have been plainly visible at the time it became his duty to look. The inference is unavoidable that if plaintiff had looked he could have averted the danger. No other reasonable conclusion can be drawn from the testimony presented in plaintiff's case. If he failed to look he was negligent and if he looked he must have seen defendant's

moving vehicle and in stepping in front of it or into it was equally negligent. What was said in Dando v. Brobst, 318 Pa. 325, 327, 177 A. 831, is apposite here: ' * * * plaintiff must inevitably have seen the car if she had looked, and if she saw nothing she could not have been looking. As we have repeatedly pointed out, it is vain for a person to say he looked when, in spite of what his eyes must have told him, he moved into the path of an approaching car or train by which he was immediately struck.' See also Weldon [Admrs.] v. Pittsburgh R. Co. [et al.], 352 Pa. 103, 105, 41 A.2d 856 * * * "

■ The rule in Pennsylvania was otherwise summarized by the Pennsylvania Supreme Court in Dwyer v. Kellerman as follows: (363 Pa. 593 at pp. 595, 596, 70 A.2d 313 at p. 314):

" 'It is settled that a pedestrian crossing a street must not only look before he enters but must continue to look as he proceeds and that *he will not be heard to say that he looked without seeing what was approaching and plainly visible*: [citing cases].' (Emphasis supplied.) See also Rucheski v. Wisswesser, 355 Pa. 400, 401, 50 A.2d 291; and Pessolano v. Philadelphia Transportation Co., 349 Pa. 73, 75, 36 A.2d 497 * * * 'A pedestrian intending to traverse a street has a duty to maintain a diligent lookout for approaching cars. If he fails to do so, he is guilty of contributory negligence as a matter of law. Gajewski v. Lightner, 341 Pa. 514, 516, 19 A.2d 355, 356.' "

In addition to plaintiff's intestate's manifest failure to look, defendants claim further negligence on his part is shown by his mere presence on the limited access highway in violation of 36 P.S. § 2391.1 which provides that:

"For the purposes of this act, a limited access highway is defined as a public highway to which owners or occupants of abutting property or the traveling public have no right of ingress or egress to, from or across such highway * * * "

and by his highly intoxicated (if not comatose) condition (75 P.S. Sec. 624.1).

Defendants' position in short is that, if a person is found at 11:15 PM in an almost comatose condition in the middle of a limited access highway and is unable to avoid a collision with a small Volkswagen he must be guilty of contributory negligence as a matter of law.

As indicated above, the Pennsylvania authorities support this conclusion. Auel v. White, 389 Pa. 208, 132 A.2d 350 (1957); Martin v. Marateck, 345 Pa. 103, 27 A.2d 42 (1942); Dwyer v. Kellerman, 363 Pa. 593, 70 A.2d 313 (1950).

■ Quite apart from the applicable law in Pennsylvania it is difficult to conceive of how plaintiff's intestate came into contact with defendants' Volkswagen without doing so intentionally or being so wantonly and grossly negligent and reckless in the premises as to produce such result. To put it mildly, it would have been a simple matter for anyone in even partial possession of his faculties to have avoided colliding with a Volkswagen travelling at 55 mph.

It is not inconceivable that a driver of an automobile on a limited access, high-speed highway with no illumination other than his own headlights might not observe a person coming from an unknown and unspecified place on the left hand side of the vehicle, but it is utterly incredible that the plaintiff's intestate failed to see the headlights of the approaching Volkswagen which was the only vehicle on the entire highway. As the Supreme Court in Pennsylvania said in the case of Sweigert v. Mazer, 410 Pa. 71 at p. 77, 188 A.2d 472 at p. 474 (1963):

" 'His failure to observe appellee's motor vehicle not only is unexplained but inexplicable.' "

If the courts are to hold that a person may get himself (i) into a highly intoxicated condition (ii) into the middle of a limited access, high-speed high-

way in the middle of the night and (iii) into contact with the only vehicle proceeding on such highway (travelling within the speed limit and with its headlights lit) and that under the circumstances a jury may determine that there was no contributory negligence, then the doctrine of contributory negligence becomes either a sham or an illusion.

For the foregoing reasons the Court feels that the verdict must be set aside and a judgment for the defendants must be entered notwithstanding the verdict under and pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.

.Pursuant to Rule 50(c) of such Rules, the Court must also rule on the defendants' motion for a new trial by determining whether it should be granted if the judgment for the defendants is hereafter vacated or reversed and must specify the grounds for granting or denying defendants' motion for a new trial.

As indicated above, the Court feels that the verdict as rendered was contrary to the weight of the credible evidence and, in addition, it also feels that the verdict was so grossly excessive as to indicate a lack of proper deliberation on the part of the jury.

Plaintiff's first claim was for alleged conscious pain and suffering of his son prior to his death and the jury returned a verdict of $10,000 on this claim. Plaintiff's theory on this claim was that the coroner's report indicated one of the causes of death to be—"bleeding to death"—and that from this entry the jury could infer that plaintiff's intestate suffered "conscious pain and suffering". Again, it defies credibility that a man with .39% blood alcohol content could (i) have been conscious after the indicated accident or (ii) have felt any pain during the very short period of time before he was pronounced dead on the arrival of the appropriate authorities. In addition, all of this presupposes that the decedent was not killed instantly and had some period of inebriated consciousness.

Again, the commonly used expression "he is feeling no pain" would have little or no meaning if this portion of the verdict were to be upheld. Common sense dictates that there is just no basis for this portion of the jury's verdict and it is even questionable in the Court's mind whether an inference of "conscious" pain and suffering may properly be drawn from the foregoing entry in the coroner's report. There was no medical testimony to such effect.

With respect to the plaintiff's second claim, the parties stipulated during the course of the trial that the maximum amount of the allowable funeral expenses was $2,411.31 and left to the jury solely the question of the reasonableness thereof. Despite such stipulated maximum, the jury returned a verdict for $2500 for funeral expenses.

The award of $67,500 for wrongful death is also incredible in the light of the evidence. The plaintiff admitted that he had testified at the first trial that his son made contributions of $100 to $200 a month for the use of various relatives of the decedent other than his mother and father. Answers to interrogatories served prior to the trial made no claim of support for Mr. and Mrs. Mehra. During the course of the second trial the plaintiff claimed apparently for the first time that some of the money (the $100 to $200 a month) had been used for his purposes and had not all been passed on to other relatives.

While the decedent gave every indication of some potential in his career and there was unquestioned evidence that he was devoted to his family, the proof also showed that he had not been working from September of 1971 until shortly before his death in April, 1972 and that in his new job of about one month he was only making $15,000 a year. There was no proof that any of his first month's salary went to his parents. There was proof that his father, the plaintiff, was working and supporting his wife. Even if it were assumed that the decedent would have made some contributions (possibly as much as $100 to

$200 a month) to his parents for the balance of their lives, the verdict was far in excess of any such amounts discounted to today's value. There must be some rational basis to sustain this or any other verdict of a jury. In this case, none exists. An outside maximum of approximately one-half of the jury's verdict might have been justifiable on the evidence, but beyond that the verdict represents "guesswork" and should not be sustained.

The Court is well aware of substantial verdicts being allowed to stand in cases such as Hart v. Forchelli, 445 F.2d 1018 (2d Cir.), cert. denied, 404 U.S. 940, 92 S.Ct. 284, 30 L.Ed.2d 254 (1971), and Campbell v. Westmoreland Farm, Inc. (E.D.N.Y., 1972, Judd, J.) 67–C–1, but does not believe that verdicts based on sheer speculation such as the one in the case at bar have any place in the true administration of justice.

For the foregoing reasons if this Court's judgment notwithstanding the verdict is vacated or reversed, a new trial should be had.

So ordered.